DOWDLE *v*. BYRD, GUARDIAN

4-6168 147 S. W. 2d 343

Opinion delivered January 27, 1941.

*Dorothy Shepard, Nathan Schoenfeld, Thos. L. Cashion* and *J. H. Carmichael,* for appellant.

*Carneal Warfield* and *Ohmer C. Burnside,* for appellee.

McHANEY, J. On April 19, 1939, appellant entered into a written contract with appellee, C. C. Byrd, father and guardian of Rose Marie and Clarice Byrd, minors, which contract was also signed by C. A. Byrd as executor of the estate of W. P. Byrd, deceased, for the purchase and sale of 400 acres of land in Chicot county, Arkansas, for a consideration of $9,077.96, of which $2,477.96 was to be paid in cash, $900 to appellees and $1,577.96 to the Federal Land Bank of St. Louis, holder of a first mortgage, to place its loan in current condition, leaving a balance of $5,100 due said bank, and the balance of $1,500 was to be evidenced by five vendor lien notes of $300 each, with interest at 5 per cent. payable annually, the first due one year after date and one each year thereafter, with a provision for accelerated maturities. It was provided in said contract that appellees should furnish an abstract of title from the date of the Federal Land Bank's mortgage and that appellant should have fifteen days to point out any defects therein and that appellees should have a reasonable time in which to cure same, and: "It is understood that the title to said property rests in minors and a probate court order will have to be secured authorizing their guardian to convey said lands, and the vendor is to secure the necessary court order authorizing him as such guardian to convey a good and merchantable title to said lands and at his expense." It was also agreed that the bank had already secured a foreclosure decree on its mortgage against said lands and the agreement was conditioned on its acceptance of the $1,577.96 to reinstate the loan, satisfy the judgment and permit appellant to repay the loan on its regular amortization plan. As per agreement, appellant deposited in the Eudora Bank $800 to bind the sale. Possession was to be given appellant on January 1, 1940, but he was to have the 1939 rents.

At the date of this contract, April 19, 1939, appellee, C. C. Byrd, was not the legal guardian of his minor daughters, but was so appointed and qualified on April 24, at which time the above mentioned contract was presented to and approved by the probate court. Thereafter the then counsel for appellant made certain objections and demanded certain requirements as to the title, all of which were complied with, and appellees executed and tendered a deed conveying said lands to appellant, to the Eudora Bank, escrow agent for both parties, and demanded of appellant the payment of the consideration as per contract which was refused.

The Federal Land Bank whose foreclosure decree had been taken April 3, 1939, not having been paid caused said land to be sold to satisfy its judgment on August 5, 1939, at which sale appellant became the purchaser for the amount of the judgment, interest and costs, and thereafter received a commissioner's deed which was approved by the court. On the same day appellant so purchased, August 5, 1939, appellees brought this action for specific performance against appellant who was a resident of Conway county and was served with summons in that county. After objecting to the jurisdiction of the court by motion to quash service which was overruled, he answered without waiving said motion, and raised issues, some of which will be hereinafter discussed. Trial resulted in a decree for appellees directing appellant to pay the sums as provided for in said contract and to execute said five notes, and to deliver the cash and notes to the escrow agent within sixty days, who in turn should deliver to appellant the deed it held for him. But, should appellant refuse to comply with the order, the escrow agent was directed to notify the commissioner who was directed to sell said land to satisfy said judgment. This appeal followed.

It is first insisted that the court had no jurisdiction of appellant because he was not served in Chicot county and that this is an ordinary suit for damages for breach of contract and is transitory. We cannot agree that this is the nature of the action. It is one for specific performance of a contract for the sale of real estate. But

say counsel for appellant that even though it is, at common law or in English equity an action for specific performance was transitory. Conceding such to be the common law, it has been changed by our statute, §§ 8253 and 8254 of Pope's Digest where it is in the former provided: "In all cases where the court may decree the conveyance of real estate, or the delivery of personal property, they may, by decree, pass the title of such property without any act to be done on the part of the defendant, where it shall be proper, and may issue a writ of possession, if necessary, to put the party in possession of such real or personal property, or may proceed by attachment or sequestration." By § 8254, such a decree is given the same effect as if the order of the court had been complied with. In § 1386 of Pope's Digest it is provided that an action for the "recovery of real property or of an estate or interest therein," . . . "must be brought in the county in which the subject of the action, or some part thereof, is situated." In *Jones* v. *Fletcher,* 42 Ark. 422, it was said: "It is very clear that the legislature intended, in the adoption of § 4532, Gantt's Digest (same as § 1386 of Pope's Digest) as a part of our code procedure, to make all actions, whether at law or in equity, where the judgment or decree is to operate directly upon the estate or title, local, and to restrict the remedy to the proper tribunal of the county where the subject of the action, or some part of it, is situated. All such actions, whether by name foreclosure, partition, ejectment, or without any special designation as to title, whether expressly mentioned in the statute or not, are local, within the meaning of this section. The courts will look to the effect of such judgments and decrees, and endeavor to give full force to the statute, and carry out the defined policy of the legislative department in limiting the remedy to the proper courts of the county where the land lies." It seems to be well settled that if the purpose of the bill and the effect of the decree are to reach and operate upon the land itself, then it is regarded as a proceeding *in rem,* and, under the statute in question (§ 1386 of Pope's Digest), is a local action and must be brought in the county where the land is situated. See,

also, *Wilson* v. *Parkinson*, 157 Ark. 69, 247 S. W. 774; *Fidelity Mortgage Co.* v. *Evans*, 168 Ark. 459, 270 S. W. 624; *Ark. Mineral Products Co.* v. *Creel*, 181 Ark. 722, 27 S. W. 2d 1003; *Crowe* v. *Davidson*, 189 Ark. 414, 72 S. W. 2d 763.

Here the object of the suit was to compel appellant to accept a conveyance of real estate and to pay therefor in accordance with his contract so to do, and if he refused to do so, having acquired the outstanding title of the Federal Land Bank, to have a lien therefor decreed upon the land and the land condemned to satisfy same. Such an action is necessarily local, under § 1386, as it is to recover an interest in real estate.

Another question argued by counsel for appellant is that, at the time C. C. Byrd as guardian entered into the contract, he was not the legal guardian of his minor daughters, and was not authorized to enter into it. The fact is that he was appointed and qualified as such five days later and the contract was approved by the probate court. Thereafter both parties recognized the contract as being valid, took steps under it, such as examining the abstract of title, making certain objections and requirements as to title, putting up $800 with the escrow agent and otherwise ratified it, and we think he is now estopped to make this contention.

Other questions are argued, but we think we may pretermit an extended discussion of them. It is said there was no mutuality; that the vendor's title was doubtful; that the title was not marketable, because defective; and that appellant was not required to accept it. It is unimportant and unnecessary to discuss these matters, because appellant became the purchaser at the foreclosure sale of the Federal Land Bank, thus acquiring the outstanding title, and at the same time was under contract to purchase the equity of redemption.

The annotator in 40 A. L. R. 1078, annotations to the case of *Slocum* v. *Peterson*, 131 Wash. 61, 229 P. 20, 40 A. L. R. 1071, under the heading, "Right of purchaser to acquire and assert outstanding title as against vendor," says: "The general rule is that the purchaser

under an executory contract cannot purchase an outstanding private title and assert it against his vendor, his only right being to set off against the purchase price the money expended in acquiring the outstanding title.'' A great many cases are cited to support the statement, among them being our cases of *Lewis* v. *Boskins,* 27 Ark. 61; *Peay* v. *Capps,* 27 Ark. 160, holding that a purchaser in possession under a contract of sale cannot acquire and assert as against his vendor an outstanding or paramount title, on the ground that his purchase inures to the benefit of his vendor. See, also, *Stone* v. *Whitman,* 192 Ark. 1072, 95 S. W. 2d 1135.

We think this rule is applicable here. Appellant purchased the outstanding title at the foreclosure sale while he was under an executory contract to purchase from appellees. His purchase at said sale did not extinguish appellees' rights, so the decree of the court was in all things correct, and it is accordingly affirmed.

HUMPHREYS, J., not participating.