William Randall McKIEVER *v.* Connie Lee McKIEVER

90-328                                    808 S.W.2d 328

Supreme Court of Arkansas
Opinion delivered April 29, 1991

*Gibson & Hashem*, by: *C. C. Gibson III*, for appellant.

*Gill, Johnson & Gill*, by: *Kenneth B. Johnson*, for appellee.

STEELE HAYS, Justice. These parties were divorced by a decree entered on September 14, 1987. The decree approved and incorporated a property settlement agreement by which Connie McKiever (appellee) was to receive $25,000 for her interest in marital property- $10,000 on entry of the decree and $15,000 on or before six months following. Custody of two minor children was awarded to Mrs. McKiever and Dr. McKiever (appellant) was ordered to pay $1,500 per month in child support. The agreement included the following provision:

> As additional support for the children, the husband shall, on or before the expiration of 12 months from the date of a final divorce decree acquire at a cost of not more than $80,000.00 nor less than $50,000.00, a resident premises for the parties' children, at which wife shall be allowed to reside. This house will be selected by wife and negotiated for by husband. The title to the residence premises shall be held by husband in trust for the children and shall be conveyed over to the children upon the youngest child reaching the age of majority, subject to any remaining mortgage debt and any easements and restrictions of record. The husband shall be responsible for the cost of exterior and structural maintenance, real estate taxes and structural fire and casualty insurance until title is conveyed to the parties' children.

On September 12, 1988, Mrs. McKiever filed a petition to find Dr. McKiever in contempt of court for refusing to acquire a residence for the children and for his failure to pay Mrs.

McKiever the $15,000 balance due her under the agreement.

Dr. McKiever alleged in response that the provision of the settlement set out above was so vague as to be an unenforceable contract, and that a material change in circumstances justified a modification in child support. Dr. McKiever conceded the $15,000 payment was late but declared he could pay it by December 31, 1988, less a credit of $4,400 he alleged he was due.

Following a hearing the chancellor upheld the property settlement agreement, found that circumstances had not changed materially, and disallowed the $4,400 credit.

On appeal Dr. McKiever renews the contention that the provision obligating him to purchase a residence for Mrs. McKiever and the children is vague and unenforceable. We reject the argument. This provision of the property settlement agreement was acceptable to both parties and their respective counsel, was approved by the chancellor and incorporated into the decree by reference. The language seems clear enough and the contention at this late date that it is vague and enforceable is unconvincing.

As to the waiver and estoppel argument, it is enough to note that this provision was for the benefit of the minor children, since the realty became theirs when the youngest reached adulthood. Too, Mrs. McKiever testified that she had attempted to complete the purchase of a residence within the twelve months but that Dr. McKiever had refused. The chancellor's finding that there had been no waiver was not clearly erroneous.

Dr. McKiever next contends the trial court erred in failing to make specific written findings as to why it did not apply the family support chart in reviewing Dr. McKiever's child support obligations.

Ark. Code Ann. § 9-12-312(a)(2) (Repl. 1991) provides:

> In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific

finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the support chart, shall the presumption be rebutted.

Dr. McKiever claims that under the new statute the chancellor is required to enter specific findings as to why the family support chart is inappropriate. Formerly, trial courts were required to refer to the chart but the degree of dependence on the support chart was left to the discretion of the chancellor. *Thurston* v. *Pinkston*, 292 Ark. 382, 730 S.W.2d 239 (1987). Dr. McKiever maintains he is entitled to the rebuttable presumption of the new statute unless the trial court's denial is justified by specific findings. We disagree.

We have not yet addressed this argument, but the Court of Appeals did so in *Ross* v. *Ross*, 29 Ark. 64, 776 S.W.2d 834 (1989), where there was a review by the trial court of an earlier support order. In *Ross*, the trial court ordered support payments under the new chart without any showing of change of circumstances. The Court of Appeals held this to be error, saying: "When support has been previously set in a decree, a change of circumstances must be found before Ark. Code Ann. § 9-12-312(a)(2) (Repl. 1991) is applicable."

This is consistent with our per curiam adopting the new chart, 301 Ark. 627, 784 S.W.2d 589 (February 5, 1990):

In publishing its per curiam, this Court recognizes that the trial court has continuing jurisdiction to modify child support orders to advance the welfare of the child when there is a material change in circumstances. *See Hilt* v. *Maynard*, 256 Ark. 31, 576 S.W.2d 211 (1979); *Lively* v. *Lively*, 222 Ark. 501, 261 S.W.2d 409 (1953). Approval of the Family Support Chart by this Court does not per se create a material change in circumstances. In determining requested modifications of child support orders entered prior to the effective date hereof, the trial court should consider the totality of the present circumstances of the parties and avoid modifications that would work undue hardship on the parties or any persons presently dependent thereon.

The chancellor found that Dr. McKiever had failed to show a change of circumstances and the evidence fully supports that position.

As his third point Dr. McKiever argues the trial court erred in allowing the introduction of business records of Dr. McKiever's medical practice and in refusing a post-trial motion to supplement the record. There is no merit to this point. Some computer printouts of Dr. McKiever's financial statements had been prepared by Dr. McKiever's accountant of nine years, Howard Sanderlin. Dr. McKiever maintains they were hearsay and it was error to admit the statements as evidence, and that his post-trial motion to supplement the record with testimony from Sanderlin about these financial statements was added error.

These documents were first discussed by Dr. McKiever on direct examination by his attorney. Dr. McKiever testified that certain figures were not correct and was then cross-examined by an attorney ad litem representing the children. After extended questioning, Dr. McKiever's attorney objected to these documents as hearsay and the objection was overruled. We believe Dr. McKiever waived any argument on this point because he not only instigated the matter, he failed to object at the first opportunity. *Pursley* v. *Price*, 283 Ark. 33, 670 S.W.2d 448 (1984); *Young* v. *State*, 283 Ark. 435, 678 S.W.2d 329 (1984). As to the refusal of the trial court to reopen the case for additional evidence, we cannot say the chancellor's broad discretion was abused.

Dr. McKiever's assertion that he was entitled to a credit of $4,400 against the $15,000 still due Mrs. McKiever is quickly resolved. Dr. McKiever testified he paid $4,400 in rent payments for Mrs. McKiever under the mistaken belief he was obligated to do so. Mrs. McKiever testified Dr. McKiever had paid her rent as part of an oral agreement made at Dr. McKiever's request so that his obligation to purchase a residence could be postponed. This was an issue of credibility which we customarily leave to the trial court. The chancellor obviously believed Mrs. McKiever and, accordingly, there was no basis for a credit as claimed.

As his last point, Dr. McKiever argues the trial court erred in awarding attorney fees of $850 to Mrs. McKiever's attorney. We have not been shown that that amount was excessive. *Price* v. *State*, 285 Ark. 148, 685 S.W.2d 506 (1985).

AFFIRMED.