Emma Gwendolyn WRIGHT, et al. *v.* UNION
NATIONAL BANK of Arkansas, Little Rock, Arkansas,
Executor

90-335                                          819 S.W.2d 698

Supreme Court of Arkansas
Opinion delivered November 18, 1991

*Lovett Law Firm*, by: *Bryan P. Boyce*, for appellant.

*Davidson, Horne, and Hollingsworth*, by: *Garland W. Binns, Jr.*, and *Chet Roberts*, for appellee.

ROBERT L. BROWN, Justice. This case concerns the assets of the decedent, Hiawatha Daniel, and specifically the claims of the appellant, Emma Gwendolyn Wright, against those assets. Hi Daniel and Gwen Wright were sisters; both were the daughters of Julia Daniel. The various claims of Gwen Wright were heard during a two-day trial, and the chancellor decided all claims in favor of the estate. We affirm the chancellor's judgment.

Gwen Wright also appeals on the issue of the estate's

liability for estate and inheritance taxes, and she is joined in this appeal by her sons, Daniel Wright and Preston Wright. Union National Bank filed a notice of cross appeal against the sons, but as cross appellant, the Bank has failed to file a brief or abstract. We, therefore, dismiss the cross appeal pursuant to Rule 10 of our Supreme Court Rules.

In 1975 Julia Daniel suffered a stroke and was virtually incapacitated until her death in 1982. After her stroke, Hi Daniel, who was not married, moved in with her mother and cared for her. Also, following the stroke, Hi Daniel and Gwen Wright established several joint banking accounts with right of survivorship. Upon her death, Julia Daniel left all of her property to Hi Daniel with the exception of $10 which she bequeathed to Gwen Wright. Funds from Julia Daniel's estate were deposited into the joint banking accounts, and the interest from the accounts was used to purchase bonds and treasury notes. Income from these investments was then paid into a household account for Hi Daniel's personal expenses. Hi Daniel made all of the deposits and withdrawals from these joint accounts.

The sisters also kept a safety deposit box in jointy tenancy in which they placed registered and bearer bonds with interest coupons as well as other securities and items of personal property. On an annual basis the sisters would meet and clip the interest coupons from the bonds and prepare the deposit slips. Subsequently, Hi Daniel would deposit the interest into her household account.

Hi Daniel died on September 6, 1988, and left assets consisting of registered bonds, treasury notes, other securities, and jewelry. The joint bank accounts totalling over $200,000 passed to Gwen Wright by right of survivorship and are not at issue in this appeal. Prior to her death, the sisters had kept bearer bonds valued at approximately $238,000 in their safety deposit box. The interest coupons all went to Hi Daniel during her lifetime. She had in her possession at time of death the coupons for all of calendar year 1988. Gwen Wright argues, however, that early in 1988, Hi Daniel gave the bearer bonds to her. The validity of that gift is one of the issues of appeal.

After Hi Daniel's death, Preston Wright removed the registered bonds which were in Gwen Wright's name from the

joint safety deposit box and testified that no bearer bonds were in the box. Because Gwen Wright had the bearer bonds and the registered bonds in her possession, the appellee executor filed suit to determine title to that property. Gwen Wright counterclaimed that the bearer bonds had been given to her by the decedent and further that Hi Daniel had held the other property, including registered bonds, treasury notes, jewelry, and other securities, in constructive trust for Gwen Wright's benefit. The executor also asked the chancellor to assess the proportionate share of each distributee for estate and gift taxes. The chancellor decided all issues in favor of the executor.

## I. BEARER BONDS

For her first point for reversal, Gwen Wright argues that the chancellor erred in finding that Hi Daniel did not consummate a gift to her of the bearer bonds prior to her death in 1988. Specifically, Wright contends that Daniel made a valid inter vivos gift when she delivered the bonds to her early in 1988 and retained only the interest coupons for 1988.

■ Our law is clear that in order for an inter vivos gift to transpire it must be proven by clear and convincing evidence that (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *See Phipps* v. *Wilson*, 251 Ark. 377, 472 S.W.2d 929 (1971).

In *Phipps* a gift of bonds was also in dispute. The alleged donor exercised control over the bonds by accepting interest payments after placing the bonds in custody for the benefit of the alleged donee. We held that drawing interest payments exhibited failure to release all future dominion and control over the property.

Here, Wright testified that actual delivery occurred. She also testified that Daniel told her to keep the bonds and said, "They are yours; hang on to them." Nevertheless, Daniel continued to receive interest on the bonds until her death and even projected future income from the bonds in her journal. She also continued to reflect the bonds in her inventory of municipal bonds

after the purported gift. There is, too, Wright's own testimony that Daniel may well have brought the bonds to her because she was on crutches at the time and her possession of the bonds would enable them to meet at her home and clip the interest coupons.

As in *Phipps* v. *Wilson*, the facts here do not evidence a clear intent on the part of Daniel to give up all future dominion and control over the bonds. We affirm the chancellor's decision.

## II. CONSTRUCTIVE TRUST

Wright next argues that an oral agreement existed between her sister and herself to the effect that virtually all of Daniel's estate, including the bearer and registered bonds, and other treasury notes and securities registered in Daniel's name would go to Wright or to her children upon Daniel's death. A constructive trust impressed on the estate's assets for the benefit of Wright was, therefore, warranted, according to Wright. To justify that constructive trust, Wright points to a confidential relationship which she maintains existed between the two sisters in later years.

A constructive trust is a creature of equity designed to prevent unjust enrichment, and it is implied from the circumstances of the case when the beneficial interest should not go with legal title to the property. *See Mitchell* v. *Mitchell*, 28 Ark. App. 295, 773 S.W.2d 853 (1989). Simply because parties are related or live in the same household does not alone establish a confidential relationship. *See Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W.2d 404 (1981). However, although a family relationship by itself is not sufficient to establish a constructive trust, in the absence of estrangement or other circumstances contradicting confidentiality, a confidential relationship may be established by showing a close relationship between a mother and father and a brother and sister. *See Beeson* v. *Beeson*, 11 Ark. App. 79, 667 S.W.2d 368 (1984). Fraud or a confidential relationship is necessary to prove a constructive trust, and it must be proven by clear, cogent, and convincing evidence. *See Bottenfield* v. *Wood and Miller*, 264 Ark. 505, 573 S.W.2d 307(1978). The burden of proving it is on the proponent of the constructive trust. *See Walker* v. *Waller*, 15 Ark. App. 336, 693 S.W.2d 61 (1985).

The chancellor found that Wright had not met her burden of proof, and we agree. There was ample testimony

presented at trial to evidence that some, if not considerable, rancor had existed between the two women at one time and perhaps even continued up to Daniel's death. Wright was admittedly angered by her mother's leaving her estate to Daniel and mentioning her only in the context of a $10 bequest. There was also testimony about Wright's suspicions that Daniel was diverting her mother's funds for her benefit during her mother's lifetime. Though varying testimony was admitted suggesting that Wright had entered into an agreement with Daniel regarding the disposition of Daniel's estate at various times, the testimony was unclear. At one point it was contradicted by Wright, who stated that there was no agreement that Wright would forego a lawsuit against Daniel regarding their mother's estate in exchange for a promise that Daniel would leaver her estate to Wright and her children.

██ It is axiomatic that the trier of fact, in this case the chancellor, determines the credibility of the witnesses. *See McKiever* v. *McKiever*, 305 Ark. 321, 808 S.W.2d 328 (1991). In the case before us the chancellor obviously believed the executor's witnesses or, alternatively, did not believe the appellant or her witnesses. We cannot say that the decision was in error.

### III. SAFETY DEPOSIT BOX

██ Wright also contends that part of the contents of the safety deposit box should have passed to her by right of survivorship, because the box was held in the names of both sisters and Wright's daughter with surviroship rights. At issue here are various securities, including registered bonds in Daniel's name, and jewelry found in the box. We have previously held that mere survivorship rights in the box itself is not sufficient to pass title to the contents absent an affirmative showing in writing to evidence that fact. *See Newton County* v. *Davison*, 289 Ark. 109, 709 S.W.2d 810 (1986); *see also Kulbeth* v. *Purdom*, 305 Ark. 19, 805 S.W.2d 622 (1991).

██ The appellants contest a retroactive application of *Davison* since the box was acquired in 1982 at the time of Julia Daniel's death. Hi Daniels, death, however, occurred in 1988, which is the time when either survivorship rights would automatically vest or Wright's cause of action would accrue. Since *Davison* was decided before this time, the appellant's argument is

without merit.

## IV. ESTATE TAXES

The appellants, who are joined by appellants Preston Wright and Daniel Wright on this one issue, argue that the estate's residue should be used to pay estate and gift taxes and that pro rata shares from the distribution should not be claimed under Ark. Code Ann. § 26-59-115 (1987). The precise language in the will reads:

> I direct that all just and legal claims against my estate, including federal and state estate and inheritance taxes, be paid as promptly as practicable after my death.

The chancellor found that a clear direction that the taxes be paid from the residue of the estate and not proportionately by the distributees was lacking. We agree. The will only directs that the taxes be paid promptly and does not direct that the taxes be paid from the estate's residue. To infer that the testatrix intended that the taxes be paid from the residue of the estate and not be spread proportionately among the distributees would be speculation on our part. The intent to shift the burden of taxation must clearly appear in the will, otherwise, state law will control. *See, e.g., Ferrone* v. *Soffes*, 558 So.2d 146 (Fla. App. 3 Dist. 1990). Here § 26-59-115 requires proportionate allocation among the distributees in the absence of a clear direction from the testatrix that the taxes be paid from the estate's residue. We affirm the chancellor on this point.

## V. BIAS

For her last argument, Wright advances a bias theory on the basis that the chancellor considered testimony from a separate trial relating to Wright's sons in deciding Wright's case. There is no evidence to support this claim, and the chancellor stated that the testimony in the sons' real estate case was separate from Wright's case. We hold that this claim is meritless.

Affirmed.