ESTATE OF James SABBS *v.* Bernice COLE

CA 96-461                                          944 S.W.2d 123

Court of Appeals of Arkansas
Division III and IV
Opinion delivered April 30, 1997

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellants.

*Walker, Campbell, Ivory, Dunklin & Davis*, by: *Sheila F. Campbell*, for appellee.

MARGARET MEADS, Judge. This is an appeal from an order of the Pulaski County Chancery Court, that dismissed appellants' amended complaint to quiet title. Appellants, Paris Sabbs and Betty Frazier, are the co-administrators of the estate of James Sabbs. Appellee Bernice Cole is the decedent's oldest daughter.

In an amended complaint, appellants alleged that at the time of his death, the decedent James Sabbs possessed certain property on Valentine Road, North Little Rock, and other property located in Lonoke County, and that appellee's claim of ownership of these properties is invalid.

At trial, appellant Paris Sabbs contended the Valentine Road property was an asset of the estate. He testified that the reason his father put the deed in appellee's name was to protect the property from an impending third marriage; that if the marriage did not work out the deed would be put back in his name; and if he died appellee would share the property with her siblings. He said he first discovered a problem with removing appellee's name from the deed around 1987, and he was present in 1992 when his father requested the property be changed back to his name, but appellee refused.

He testified further that his father kept up the premises, paid for repairs, paid the property taxes and insurance, and always acted like the owner. He also testified that he did not consider his father to need assistance in taking care of his business affairs, and he was

happy his father was able to look after his own affairs. He said his father told him he did not sue appellee when she refused to remove her name from the deed, because he believed she would eventually do the right thing and deed the property back to him or share the property with her siblings upon his death.

Appellant Betty Sabbs Frazier testified that she saw the deed in 1992 with appellee's name on it and asked her father why he had done this. He said he thought appellee would deed it back to him, and he trusted her. She said she asked him if he wanted her to get legal help and he said, "No."

Irma Aaron, who had a courtship with James Sabbs, testified that he told her that he put the property in appellee's name so nobody would take his property, but they weren't getting along, and he had asked for the property back.

The decedent's nephew testified that he lived with the decedent for six months in 1989, paid rent to him, and was not aware of any dispute between him and appellee. He said the decedent never mentioned any problem in regard to the property, but he had damaged the property to make it hard on the children. He also testified that his uncle took care of his affairs "real good," and he never saw anyone exert any influence on him or cause him to do something he did not want to do.

Elouise Garrett, who married James Sabbs in January 1973 and subsequently divorced him, testified that he told her appellee owned the Valentine Road property and that he had given her a deed. She said that during the time she was married to him, appellee visited her father practically every weekend, and he never indicated he did not want appellee to have the property. She further testified she was not aware of any dispute between appellee and her father concerning the property, and he told her he had deeded the house to appellee and "it was hers."

Appellee testified that her father deeded her the property on Valentine Road. She said he called her at work, told her he had something he wanted to give her, and he would come by and pick her up. When he arrived, he said he was giving her his property on Valentine Road because she would not share in any of his other

property. They went to a law office where the deed was already prepared, and he signed it. Later the deed was mailed to appellee by certified mail, and she recorded it. Appellee testified that she held the recorded deed for awhile and later gave it to her father because he was executor of her will and the documents would be together. Her father returned the deed to her in 1985, and she returned it to him in 1990 when she married Aldolphus Cole. The deed and appellee's will were in the decedent's safe deposit box when he died.

Appellee testified her father did not request that she deed the property back to him; did not discuss it with her in the presence of her brothers and sisters; and that her father was present when appellee Paris Sabbs asked her to return the deed. She said her father did not agree with Paris's request and denied that her father asked her to remove her name from the deed.

Appellee testified further that the agreement with her father was that he could continue to live there, maintain the property, and collect the rent as long as he lived, and she considered him to have a life estate. She testified further that she has maintained insurance on the property, paid the real estate taxes, and collected the rents. Appellee admitted not claiming the property as an asset when she tried to obtain a bank loan and not listing it as an asset when she was divorced.

Documentary evidence included appellee's 1989-1992 Federal Income Tax Schedule A, which showed no rental income or depreciation deduction on the property; real estate tax receipts for 1989-1992 reflecting that appellee paid the property tax; application for property insurance listing the deceased and appellee as the insureds on the Valentine Road property; a declarations page from the policy addressed to appellee; the decedent's 1988 income-tax return showing he declared the rents as income; and lists of expenses of the decedent allegedly for repairs to the property.

In an order entered January 8, 1996, the chancellor found that the witnesses gave conflicting testimony regarding the decedent's statements; that she did not place much weight on alleged statements made by the deceased to the witnesses; that Irma Aaron and Elouise Garrett were credible witnesses; that the most telling

testimony was that of the decedent's nephew; and that neither Paris Sabbs nor appellee were credible witnesses. The chancellor considered it significant that the decedent took no action, after a discussion regarding the property, to set aside the conveyance. Most important no attempt was made to reclaim the property, and there was nothing in writing to show that the decedent intended a disposition which conflicted with the deed. The chancellor held further that although appellee was not particularly credible, it appeared that she and her father had an agreement that he would live on the property during his lifetime, as she had testified, because that is, in fact, what happened.

The chancellor held that appellants failed to prove the decedent intended a different disposition of his property than the recorded deed and dismissed the complaint.

On appeal, appellants argue the trial court erred in dismissing the complaint. Specifically, appellants contend that the decedent neither intended nor completed delivery of the deed to the Valentine Road property, and that title was not transferred because he retained possession and control of the property, retained the rental income, and paid taxes on the property. Appellants also argue that the decedent did not make a gift of the Lonoke property to appellee.

In order for an *inter vivos* gift to transpire, it must be proven by clear and convincing evidence that (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *Wright v. Union National Bank*, 307 Ark. 301, 819 S.W.2d 698 (1991). Although we hear chancery cases de novo, the test on review is not whether there is clear and convincing evidence to support the trial judge's findings, but whether we can say the judge was clearly wrong; whether the findings of the trial judge are clearly erroneous. *Akin v. First National Bank*, 25 Ark. App. 341, 758 S.W.2d 14 (1988). In addition, where the pivotal issue is credibility of interested parties whose testimony is in direct conflict, we defer to the chancellor's judgment. *Rector-Phillips-Morse,*

*Inc. v. Huntsman Farms, Inc.*, 267 Ark. 767, 590 S.W.2d 317 (Ark. App. 1979). Finally, when a deed reserves a life estate in the grantor, there is no requirement that the instrument pass beyond the grantor's control and dominion, and the fact that the deed is found among the effects of the grantor at his death raises no presumption against delivery, and the grantor's retention of possession and control over the property conveyed is not inconsistent with delivery. *Grimmett v. Estate of Beasley*, 29 Ark. App. 88, 777 S.W.2d 588 (1989).

Here, the chancellor heard conflicting testimony of several witnesses. The chancellor found Elouise Garrett and Irma Aaron to be credible witnesses. Ms. Garrett testified that she was not aware of any dispute between appellee and her father, and Ms. Aaron testified that the decedent voluntarily executed the deed giving the property to appellee, and although he said he wanted it back, she never saw appellee "over there for him to ask her." The chancellor also relied on the testimony of appellant's nephew that the decedent did not mention any problems with the property or appellee.

Moreover, there is no evidence that the decedent was of unsound mind. Indeed, Paris Sabbs testified that the decedent was able to take care of his own business affairs. Further, there was evidence that the deed was prepared by an attorney, signed by the decedent, and mailed to appellee by certified mail. Although the deed was found in the decedent's safe-deposit box and did not specifically reserve a life estate in the decedent, the chancellor found there was an agreement that the decedent would live on the property during his lifetime. We think this is analagous to a life estate, and as we have already stated, in the case of a life estate there is no requirement that a deed pass beyond the grantor's control, and the grantor's retention of possession and control over the property is not inconsistent with delivery. Moreover, Ms. Garrett testified the decedent told her appellee owned the property and that he gave her a deed, and Ms. Aaron said he voluntarily executed the deed.

Finally, there is evidence that appellee paid the 1989-1992 property taxes and was listed as a co-insured on the property, and

given appellee's testimony that her father gave her the property, we do not think it can be seriously contended that appellee refused the gift of the property.

■ Recognizing that the testimony was in dispute, but giving deference to the chancellor's opportunity to judge the credibility of the interested parties, we cannot say the chancellor erred in dismissing appellants' complaint as to the Valentine Road property.

■ One other matter remains for our discussion. Appellants also alleged that the decedent owned certain lands in Lonoke County; on appeal they argue that the decedent did not make a gift of this property to appellee and that it should be included in the estate for distribution to his heirs. Suffice it to say, if the effect of a decree is to reach and operate upon the land itself, then it is a proceeding *in rem* and a local action and must be brought in the county where the land is situated. *Dowdle v. Byrd*, 201 Ark. 775, 147 S.W.2d 343 (1941).

Affirmed.

STROUD, ROGERS, and BIRD, JJ., agree.

PITTMAN, J., dissents.

COOPER, J., not participating.

JOHN MAUZY PITTMAN, Judge, dissenting. I respectfully dissent because I disagree with the result reached by the prevailing judges.

In the order of dismissal the judge stated:

> This case is a good example of the reason for the hearsay rule. Assuming the veracity of the sworn witnesses (which will be discussed later), most gave conflicting testimony regarding statements made by the deceased. In many instances, it appeared to the court that the deceased was less than candid, telling the witnesses whatever was expedient. The hearsay rule assumes that since the declarant is not under oath, he may not be making truthful statements. Therefore, the statements should be excluded. Each side freely allowed testimony about statements given by the deceased. However, the court has not placed much

weight on alleged statements made by the deceased to the witnesses.

\* \* \* \*

It is clear that the deceased's children were fighting over the property. That fact does not mean the deceased intend [sic] any other result for the property than the conveyance to defendant. Both parties agree that a discussion occurred between the deceased, Paris Sabbs and the defendant [appellee] in 1992. The account is simply different. Neither the plaintiff, Paris Sabbs, nor the defendant, Bernice Cole presented as credible witnesses, and they both had vested interests in the outcome of the trial. The significant thing to the court is that the deceased took no action after his discussion until his death in 1993 to set aside the conveyance. Even if he had intended another result, his failure to act after that discussion, at the very least, indicates an acquiescence to the deposition [disposition]. His failure to act cannot now be transferred to representatives of his estate when he clearly had the opportunity to act and chose not to.

\* \* \* \*

The deceased deeded the Valentine property to the defendant on September 8, 1972, and filed the deed of record. The plaintiff continually argues that the defendant did not prove that she owned the property. The burden of proof is not on the defendant, since she is the record title holder.

The Arkansas Dead Man's Statute was repealed when the Revised Uniform Rules of Evidence were adopted in 1976. Since its repeal, courts determine the admissibility and proof of the deceased's words and dealings on the basis of its relevance and reliability, just as the admissibility of all unprivileged evidence is determined. The chancellor's comment that the decedent's statements should be excluded as hearsay is incorrect.

I believe the chancellor's focus on the 1993 discussion is misplaced. The focus should have been on Sabbs's intent to make the gift at the time of the grant as the delivery of a deed is not valid unless the grantor intended to pass title immediately. *Johnson v. Ramsey*, 307 Ark. 4, 817 S.W.2d 200 (1991).

Additional factors that evidence that appellee did not receive the property as a gift are as follows:

After the deed was recorded, it was returned to the residence of James Sabbs. Appellee did not list the property as an asset in a mortgage application for her current residence nor designate the property as an asset in her 1978 divorce. Appellee did not claim any appreciation for the property nor report any rental income from the property on her income tax returns. The property was insured in the names of appellee and her father. Appellee testified that she received the rent from the property; however, the only rental receipts in the record that were signed by the appellee were dated after Mr. Sabbs's death. Although appellee testified that the rental income was for her personal use, she testified that she never withdrew monies from the joint account in which the rental income was deposited. Appellee could only produce 1991 and 1992 real estate tax receipts and 1989 through 1992 income tax returns showing payment of real estate taxes.

An asserted gift, whether *causa mortis* or *inter vivos*, must be established by evidence which is "clear and convincing." *Boling v. Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979); *Smith v. Clark*, 219 Ark. 751, 244 S.W.2d 776 (1952); *Lehman v. Broyles*, 155 Ark. 593, 245 S.W. 24 (1922); *Lowe v. Hart*, 93 Ark. 548, 125 S.W. 1030 (1910). The required elements for an effective *inter vivos* gift, which must be proven by clear and convincing evidence, are that the donor knew and understood the effect of his act and intended that effect; that the donor made actual delivery to the donee; that the donor intended to pass title immediately; and the donee accepted the gift. *O'Flarity v. O'Flarity*, 42 Ark. App. 5, 852 S.W.2d 150 (1993).

In *Bennett v. Miles*, 212 Ark. 273, 205 S.W.2d 451 (1947), we said:

> In the more recent case of *Baugh v. Howze*, 211 Ark. 222, 199 S.W.2d 940 [(1947)], we said: "To constitute a valid gift *inter vivos*, certain essential elements must be present, these include actual delivery of the subject-matter of the gift to the donee or to some one as agent or trustee for the donee, with a clear intent to make an immediate present and final gift beyond recall, and at the

same time unconditionally releasing all future dominion and control by the donor over the property so delivered."

When these well-settled rules are applied to the facts of this case, I find that two of the essential elements necessary to a valid gift are absent in that Sabbs did not give the deed to appellee with the intention at the time of passing title to her and that appellee did not accept the gift as her own, but only as agent for Sabbs, or as a trustee, and therefore, there was no valid gift *inter vivos.*

The existence of a confidential relationship between the parties raises a rebuttable presumption that the gift was obtained by undue influence or other improper means. The burden is on the alleged donee to rebut this presumption and to establish that the claimed gift was fairly and properly made to him. *Mohr v. Hampton*, 238 Ark. 393, 382 S.W.2d 6 (1964); *Burns v. Lucich*, 6 Ark. App. 37, 638 S.W.2d 263 (1982).

I do not believe the appellee has met the burden of proof necessary to establish the asserted gift *inter vivos* by the required standard of clear and convincing evidence. I believe that the chancellor's decision is clearly against the preponderance of the evidence and should be reversed.