TENNY v. PORTER.

Opinion delivered November 30, 1895.

LIMITATION—RECOVERY OF LAND SOLD AT JUDICIAL SALE.—An action to foreclose a mortgage of land purchased by the mortgagor at judicial sale is not an action "for the recovery of land sold at judicial sales", within the five years' statute of limitation (Sand. & H. Dig. sec. 4818).

TRUST FUNDS—LIABILITY OF DEPOSITARY.—Where a trustee deposits trust funds with a business firm in his own name in the usual course of business, the firm will not be liable to the beneficiaries of the trust where it had no notice that the money did not belong to the trustee until after the deposit had been withdrawn from its control, and it had settled with the trustee.

COMPETENCY OF WITNESSES—TRANSACTIONS WITH DECEASED.—The testimony of a plaintiff as to transactions with a deceased person, made in a civil action wherein the guardian of minors was a defendant, is competent, where he was called to testify by the opposite party.

USURY—RENEWAL NOTE.—Where a surety in a note, for a valuable consideration received from the principal, assumes the debt, and gives a new note in renewal of the old one, neither he nor his heirs can defeat the collection of the new note on the ground of usury in the old one.

CONFLICT OF LAWS—VALIDITY OF LIEN.—The validity of a note and mortgage will be determined by the law of the state in which it is executed, although the mortgage is upon land situated in another state.

Appeal from St. Francis Circuit Court in Chancery.
MATTHEW T. SANDERS, Judge.

*W. G. Weatherford* for appellant.

1. In 36 Ark. 591, 606, this court expressed an opinion regarding the construction of the writing called the assignment, but it was clearly *obiter dictum.* It does not bind appellants, and, with all deference, the views expressed therein were erroneous. A power to sell, coupled with an interest *in the thing to be sold,* survives the grantor; otherwise, where the interest is in the *proceeds only* of the thing. To constitute a power coupled with an interest, the interest must be in the subject matter, not in that which is *produced* by the exercise of the power. 8 Wheat. 174–5; 70 Cal. 296; 45 Ind. 183; 6 Conn. 559; 53 Pa. St. 214; 28 Ga. 511; 59 Tex. 397; 5 Howard, 233.

2. Appellees are barred by the statute of limitation. Mansf. Dig. sec. 4474; 53 Ark. 400, 410; 52 *id.* 171.

3. The courts of this state will not enforce usurious contracts made in another state. It is against the public policy of the *lex fori.* 4 Pet. 230; *Ib.* 376; 3 Dall. 374; 111 U. S. 252; 101 *id.* 108; 54 Ark. 187; 47 *id.* 378; 46 *id.* 420; 41 Ark. 340.

4. Even in Tennessee, the surety is entitled to have the usury abated. 9 Heisk. 491; 6 Lea, 351.

5. Appellees, holding the equitable title, are seeking to establish their claim against the holders of the legal title. They should be required to do equity, and restore the money appropriated by them to the payment of a *past due* indebtedness of their father. They should do equity. 57 Ark. 536; 53 *id.* 69; 9 Lea, 415; 2 Head, 85; 10 Yerg. 105; 6 Cold. 509; 6 Humph. 438; Story, Eq. Jur. sec. 64; 4 Dall. 284; 5 How. 192; 46 N. Y. 615; 50 Mo. 603; 79 N. Y. 183; 54 Iowa, 86. An ante-

cedent debt does not constitute a valuable consideration, so as to make the creditor a *bona fide* purchaser. 2 Pom. Eq. sec. 1048 and note, and sec. 1047.

*N. W. Norton,* for appellees.

1. The assignment passed on in 36 Ark. 576 was an equitable mortgage to appellees. 6 Am. & Eng. Enc. Law, 680, 681 ; 2 Dessaussure, 552 ; 2 Am. Dec. 696 ; 1 Jones, Mortg. sec. 162. This question is now *res judicata.* 1 Black. Judgm. sec. 148 ; 2 *id.* sec. 524.

2. The cross-bill by appellees was not an action "for recovery of lands," and was not barred by the five years' statute. 31 Ark. 272 ; 56 *id.* 485 ; 43 *id.* 569 ; *Ib.* 504.

3. This was a Tennessee contract, and is governed by the usury laws of that state. 35 Ark. 52.

4. The insurance money was deposited by J. M. Farrow and withdrawn by him, and appellees had no notice of any trust.

5. J. M. Farrow assumed for a consideration the J. J. Farrow debt, and cannot plead usury. Tyler on Usury, p. 403 ; 32 Ark. 362.

BATTLE, J. This is the second time this action has been in this court on appeal. It appears the first time as *Porter, Taylor & Co.* v. *Hanson,* 36 Ark. 591.

J. M. Farrow brought an action in the St. Francis circuit court against John Parham to foreclose a vendor's lien on certain lands, and obtained a decree against him for $6,037, which was declared a lien on the lands, and they were sold by a commissioner of the court, and purchased by Farrow at the price of $4,800. The court confirmed the sale, but postponed the execution of the deed, holding that Parham was entitled to one year in which to redeem.

Farrow, being indebted to Porter, Taylor & Co. in the sum of $3,188, and to Newton, Ford & Co. in the

sum of $3,050.20, and thinking that Parham might redeem the lands, executed to them an instrument of writing, empowering them to collect and receive the redemption money from Parham, and apply it to the payment of their debts *pro rata*, and providing that, if Parham failed to redeem, one John B. Cummins should, as trustee, sell the lands, and appropriate the proceeds to the payment of the debts.

Before the expiration of one year after the sale under the decree of the court, Farrow died, and the lands, not having been redeemed, were conveyed by a commissioner, under an order of the court, to his heirs.

In August, 1877, Hanson, Weatherford & Estes, a firm of lawyers, instituted an action in the St. Francis circuit court against the heirs of Farrow, and D. T. Porter, W. F. Taylor and G. W. McCrae, as partners composing the firm of Porter, Taylor & Co. and the first two as surviving partners of the late firm of Newton, Ford & Co., to enforce a lien upon the lands for professional services rendered by them in the suit instituted by Farrow against Parham. The lands were again sold, the last time under a decree rendered in the last mentioned suit, and were purchased by the creditors, who were parties thereto. But they refused to comply with their bid, and tendered an answer and cross-bill instead, in which they asserted rights in the lands, or the proceeds of the last sale, under the instrument of writing executed to them by Farrow, superior to all others, and appealed from an adverse decree.

This court held that they were bound by their purchase, and that Hanson, Weatherford & Estes had the superior lien, but expressed the opinion that the instrument of writing created a lien in their favor, and remanded the cause with the direction that the heirs of Farrow be brought in by new service "for all matters connected with the cross bill, and have day in court."

The attorney's ·lien was subsequently discharged, and the creditors, Porter, ·Taylor & Co. (now .Porter & McCrae), and the Farrow heirs, the appellants, were left to litigate.

At the October term, 1881, the St. Francis circuit court directed a warning order to be published, requiring the Farrow heirs to answer Porter, Taylor & Co.'s cross-bill. On the 18th of February, 1882, they filed an answer, and alleged that, within the year allowed for the redemption of the lands from the first sale, J. M. Farrow died, and the St. Francis circuit court, at its October term, 1876, vested the title to the lands in them, and that more than five years had elapsed before the cross action was commenced against them.

They denied that the creditors were entitled to any relief under the instrument of writing executed by J. M. Farrow, and averred that the debts secured thereby were illegal and usurious; that, on the 1st of April, 1871, J. J. Farrow executed to said creditors a note for $3,951.94, which was due on the 1st of December, 1871, and on the 19th of December, 1871, together with J. M. Farrow, their father, executed a note in renewal of the first, which was due on the 1st of January, 1873, for $4,428.72, including $474.52 interest for thirteen months, —more than 12 per cent. per annum,—and this was part of the note secured by the instrument of writing sued on.

By the way of counter claim, they alleged that their father, J. M. Farrow, had, on the 20th of June, 1871, in his possession, as their trustee, $9,500, belonging to them, which he, on that day, delivered to said creditors, he being individually indebted to them as Newton, Ford & Co. in the sum of $1,838.69, which they retained out of the $9,500, and appropriated the remainder, according to his directions, to the payment of his individual account with them.

And they filed with their answer interrogatories which they propounded to the cross-complainants, and asked that they be required to answer them, which was done.

Upon a final hearing upon the merits the court found that the cross-action was not barred by the statutes of limitation; that J. M. Farrow, the father of the defendants in the cross-complaint, collected in 1871 $10,-000 of the St. Louis Mutual Life Insurance Company, which was a trust fund in his hands for them; that on the 20th of June, 1871, he deposited of this fund $9,500 with Porter, Taylor & Co., which they received, and credited him therewith as his fund, and on the same day appropriated $1,838.69 thereof to the payment of an indebtedness of J. M. Farrow to them, but that it does not appear that they had notice of the trust at the time of the deposit and appropriation; that the indebtedness of J. M. Farrow to the cross-complainants, as evidenced by his notes to them, was contracted in Tennessee, and was usurious, but that in Tennessee a usurious contract may be purged of usury, and the principal and six per cent. per annum interest thereon can be collected; that the note executed by J. M. Farrow in payment of the indebtedness of J. J. Farrow was based on a valuable consideration received by the former from the latter, and was, therefore, valid as to principal and interest; and that, purging the indebtedness of J. M. Farrow, except the last mentioned note, of usury, he was indebted to cross-complainants in a sum larger than the amount of the proceeds of the second sale under the decree of the St. Francis circuit court and interest thereon; and decreed that they retain in their hands such proceeds, they having purchased the lands at the second sale, and still owing for the purchase money at the rendition of the decree.

The finding of the court as to the statute of limita-  As to limita-
tion is correct.  The cross-action of Porter & McCrae
was not an action to recover lands within the meaning
of the five years' statute pleaded by the defendants; and
the plaintiffs and defendants therein claimed under the
same judicial sale.  *Duke* v. *State*, 56 Ark. 485; and
*Phelps* v. *Jackson*, 31 Ark. 272.

The allegations of the Farrow heirs as to the $9,500  Liability of depositary of
were denied by the plaintiffs in the cross-action.  No  trust funds.
evidence as to their truth or falsity appears in the
record, except an answer filed by them in an action in-
stituted by the Farrow heirs, or a part of them, against
the plaintiffs in this action in a Tennessee court.  In
that answer they admitted that J. M. Farrow deposited
with Ford, Porter & Co. $9,500, but denied that there
was paid out of that sum an indebtedness of J. M.
Farrow to the late firm of Newton, Ford & Co. of
which they had been members, and in which they were
then interested; and alleged that, three days before the
receipt of the $9,500, J. M. Farrow was charged with
cash paid Newton, Ford & Co., $1,464.99," but this oc-
curred before the credit of the $9,500, and had no con-
nection whatever with that money; that, after the
deposit was made, the account of Farrow was continued
as usual, and "small amounts of merchandise were from
time to time sold him, and charged on the account;" that
"these items for merchandise for the month of June,
1871, amounted to $93.60, for July about $66, for August
$69, for September $95.24, for October $29.46, and the
full amount of such debts, after the date of such de-
posit and to the closing of the account, aggregated less
than $400;" that "the balance of the debit items of the
account were cash paid to the said Farrow in person or
on his order;" that the deposit of this money was in
the usual course of business, and without any notice
that it was not his own, until an action for the settlement

of the estate of Farrow had been commenced, long after the money had been withdrawn from their hands and control, and when, it appears, repeated settlements had been made by them and Farrow—Farrow had died—and they had, many years prior to the notice, probated their claims against his estate. Under these circumstances, they were not liable to the heirs for the deposits.

As to the note given by J. M. Farrow in the payment of the indebtedness of J. J. Farrow to Newton, Ford & Co. it appears that J. J. Farrow executed a note to Newton, Ford & Co., for $3,951.94 on the 1st of April, 1871; that on the 19th of December, 1871, J. J. and J. M. Farrow paid this note by executing another for $4,428.71, payable on the 1st of January, 1875, adding for interest $474.52, and for stamps $2.25; and that on the 21st of February, 1876, they executed to Newton, Ford & Co. another note for $3,050.20 in renewal of the note for $4,428.71, and this is one of the notes secured by the instrument of writing in question. These facts appear in an answer of plaintiffs to an interrogatory propounded to them by the defendants. It further appears in the same answer that J. M. Farrow did not become a principal in said notes "until long afterwards, when, for a consideration moving from J. J. Farrow to J. M. Farrow, the latter assumed the balance of said indebtedness then due."

Competency of testimony.

But appellants, the defendants, say that the portion of the answer as to the consideration was not responsive to the interrogatory, and for that reason, and because it related to transactions with a deceased person, and was made in an action wherein the guardian of minors was a defendant, it was not competent testimony. The question propounded is as follows: "Please examine the paper marked 'X No. 1' attached to our answer hereto, which is referred to in paragraph 6, and state if it is not genuine, and if it was not furnished by the house of

Newton, Ford & Co., and if the indebtedness therein referred to is not the same that is evidenced by the note of James M. Farrow to Newton, Ford & Co., dated February 21, 1876, for $3,050.20, and included in the writing which is referred to in your cross-complaint." It will be seen from this question that its object was to ascertain the consideration of the note for $3,050.20. To it the appellees (plaintiffs) answered as follows: " The paper marked 'X No. 1,' filed with the answer, is genuine, and was furnished by the house of Newton, Ford & Co. The indebtedness of [to] Newton, Ford & Co. of $3,050.20, referred to, is part of the original indebtedness of J. J. Farrow mentioned in the exhibit. J. M. Farrow was the surety on the note credited in said exhibit, and the interest charged therein was in fact a charge against J. J. Farrow; and J. M. Farrow did not become the principal debtor on said indebtedness until long afterwards, when, for a consideration moving from J. J. Farrow to J. M. Farrow, the latter assumed the balance of said indebtedness then due." The answer was fairly responsive to the question. An answer in the affirmative would have made it appear that the note for $3,050.20 was executed by J. J. Farrow as principal and J. M. Farrow as surety, and was usurious. That would have been false. Hence, to give a true answer, it was necessary for appellees to respond as they did. As they were called to testify by the opposite party, their answer was competent evidence. Schedule of Constitution, sec. 2.

The note of J. M. Farrow for $3,050.20 being based on a valuable consideration received by him from J. J. Farrow, it is a valid obligation. Neither he nor his heirs can defeat the collection of it by pleading usury. *Pickett* v. *Merchants National Bank*, 32 Ark. 346, 374; Tyler on Usury, 403.

*When renewal note not usurious.*

The last mentioned note being a valid note, and the other. purged of usury according to the laws of Tennessee, where the contracts in controversy were made, J. M. Farrow was indebted to appellees in an amount exceeding the purchase money of the second sale of the lands and interest thereon.

Validity of :mortgage lien.

But it is contended by appellants that, inasmuch as the constitution of this state declares that all contracts for a greater rate of interest than 10 per cent. per annum shall be void, and the notes executed by Farrow to appellees bear a greater rate than 10 per cent. per annum, and the lands on which the lien is charged by the instrument of writing in question lie in this state, the writing creating it is void. But this contention is not correct. The law of the place which determines the validity of a contract secured by a mortgage determines whether the mortgage be valid or usurious, irrespective of the place where the land which is the subject of the mortgage is situated. Contracts for a greater rate of interest than is allowed by the laws of this state, when valid according to the laws of the place which determine their validity, have been frequently upheld and enforced by our courts. There is no good reason why a mortgage or lien on lands in this state securing such interests should not also be enforced. 1 Jones on Mortgages (5 ed.), secs. 657–661, and cases cited ; and Pingrey on Mortgages, secs. 795–798, and cases cited.

The validity of the contracts secured by the lien in this case is determined by the laws of Tennessee. One being valid as to the principal and interest, and the other except as to all interest in excess of six per cent. per annum, the lien securing them is valid to the same extent.

It is further contended by appellants that the power conferred on John B. Cummins by the instrument of writing executed by Farrow to secure creditors, not be-

ing coupled with an interest in the lands thereby encumbered, did not survive Farrow. But this is immaterial. No one is seeking to exercise the power. The instrument of writing is an equitable mortgage, and appellees have brought their action to foreclose it, which they had the right to do.

The decree of the circuit court is affirmed.