SMITH, ADMINISTRATRIX *v.* CLARK.

4-9645                                          244 S. W. 2d 776

Opinion delivered January 7, 1952.

*Lee Ward,* for appellant.

*Barrett, Wheatley & Smith,* for appellee.

MINOR W. MILLWEE, Justice. Francis Cline Clark died intestate in Craighead County on July 2, 1949, survived by appellant, Frances Jeanette Smith, his daughter, and by appellee, Fred Clark, a brother. Appellant brought this suit as administratrix of her father's estate to recover $2,800, which sum she alleged belonged to her as heir and was fraudulently withdrawn from her father's bank account by appellee and converted to his own use.

Appellant attached to her complaint certain interrogatories which she asked that appellee be required to answer under oath. Five of the six questions propounded related to circumstances surrounding the issuance and delivery to appellee of a check by the deceased covering the funds in controversy.

The answer of appellee contained a general denial and further alleged a gift to him by his brother of the balance of the $2,800 remaining after payment of funeral and other expenses incident to his brother's last illness in the approximate sum of $1,465. Answers to the interrogatories were attached to appellee's answer signed by his solicitors. In response to appellant's motion for summary judgment because appellee had failed to answer the interrogatories under oath, appellee refiled the answers under oath.

Appellant filed a demurrer to the answer on the ground that it did not state facts sufficient to constitute a defense and also filed a reply denying generally the allegations of the answer.

After trial on oral testimony, the cause was taken under advisement. A decree was subsequently entered dismissing appellant's complaint and finding that the evidence established a gift *causa mortis* to appellee from his brother of the funds in controversy.

There is no dispute in the evidence which is to the following effect. Francis Cline Clark and his wife separated about 1930 and were divorced in 1931 or 1932. Appellant, who is their only child, lived with her maternal grandparents for several years following the separation and until she married. After the separation, Francis Cline Clark lived with appellee and his family. Although he visited appellant after her marriage, Clark continued to make his home with appellee for more than fifteen years and until his death in July, 1949. Clark became afflicted with cancer and in May, 1949, entered a Jonesboro hospital where he was confined for eight weeks before his death. Several days prior to June 25, 1949, and after he had undergone two operations, Clark delivered to appellee his signed check in blank on the Security Bank & Trust Company of Paragould, Arkansas. He directed appellee to withdraw his deposit of approximately $2,800 in the bank, pay all medical expenses and other debts owed by him (Francis Cline Clark), and that appellee keep for himself any balance remaining in the event of his brother's death. Appellee took the signed blank check to the bank on June 25, 1949, where a teller filled in the date and amount of the check payable to "cash" for $2,800, as directed by appellee. Appellee endorsed the check and received the $2,800. He paid the hospital, medical and other bills incurred on account of his brother's last illness in the amount of approximately $1,400.

Two nurses who attended Clark while confined in the hospital testified to conversations in which he told them that he would never get well, that appellee and his

family had done more for him than anybody, that he intended to sign a check for appellee to draw his money out of the bank and wanted appellee to have the money remaining after payment of his hospital bills and other debts. Clark later told them that he had signed such a check. Similar testimony was given by appellee's daughter. It was shown that decedent customarily signed checks in blank with directions to the payee to fill in the blanks. It was also shown that he was devoted to appellee and his family. An automobile owned by Francis Cline Clark was turned over to appellant as administratrix and there was some evidence that he had a $1,000 life insurance policy payable to appellant.

Appellant first contends that the answer of appellee did not state facts sufficient to constitute a defense to the complaint and that her demurrer to the answer should now be sustained. Although the record does not show that the demurrer was ever presented to the trial court, appellant says the question is still before this court by virtue of Ark. Stats., § 27-1140. This statute provides that unless the demurrer is presented to the court before calling a cause for trial, it shall be regarded as waived as to all points except the jurisdiction of the court, and that the pleading demurred to does not state facts sufficient to constitute a cause of action, or defense.

We think appellant's contention is untenable. The answer of appellee, after admitting that Francis Cline Clark died intestate and that appellant was administratrix of his estate, denied "each and every other material allegation contained in the complaint". Thus we have a general demurrer to an answer containing a general denial of the facts alleged in the complaint. The authorities generally hold that a denial is not subject to demurrer where it presents an issue on material allegations. In 71 C. J. S., Pleading, § 241b, it is said: "It has been held that an answer which contains a general denial coupled with, or contained in, allegations and statements of fact purporting to constitute an affirmative defense is not subject to successful attack by demurrer, although the new matter by itself does not constitute a defense."

The demurrer to appellee's answer admitted the truth of its allegations for the purpose of the demurrer. Since the answer contained a general denial of the allegations of the complaint, it stated a good defense and the demurrer could properly have been overruled for this reason. But the answer also set up additional allegations which, if true, were sufficient in our opinion to establish a gift *causa mortis*. We deem it unnecessary to set out these rather lengthy allegations which are in substantial conformity with the proof adduced by appellee as hereinbefore set out.

So we consider appellant's contention that the allegations of the answer are insufficient to establish a gift *causa mortis* in connection with her further contention that the evidence is insufficient to prove such gift. It is well settled that gifts *causa mortis* as well as gifts *inter vivos* must be established by clear and convincing testimony. *Bennett* v. *Miles, Administrator*, 212 Ark. 273, 205 S. W. 2d 451. There is considerable conflict in the authorities as to whether the donor's own check may be the subject of a gift *causa mortis*. Many courts hold that a gift of the donor's own check made in expectation of death is not the subject of a gift, either *inter vivos* or *causa mortis*, where such check is not accepted or paid by the bank before the donor's death. 38 C. J. S., Gifts, § 106; Anno. 20 A. L. R. 177; 44 A. L. R. 625; 53 A. L. R. 1119. But this court is committed to the so-called minority rule which holds that one's check or draft may be the subject of a valid gift by the maker although it is not presented for payment until after the death of the donor.

In the leading case of *Carter* v. *Greenway*, 152 Ark. 339, 238 S. W. 65, Judge HART stated the rule as follows: "It is earnestly insisted by counsel for appellants that a check can not be made the basis of a gift *causa mortis*. There is some conflict and confusion in the authorities on this question. But we think that the better reasoning and the trend of our own authorities, where the rights of creditors are not involved, is that when the delivery of the check is coupled with an intent to transfer a present

interest in the money, and no revocation is attempted, the intent of the donor should be given effect, and that the donee has the right to the payment of the check after the death of the drawer as well as before.''

In that case the court also approved the following statement by the New York Court in *Ridden* v. *Thrall*, 125 N. Y. 572, 26 N. E. 627, 11 L. R. A. 684: ''To consummate a gift, whether *inter vivos* or *causa mortis*, the property must be actually delivered, and the donor must surrender the possession and dominion thereof to the donee. In the case of gifts *inter vivos*, the moment the gift is thus consummated it becomes absolute and irrevocable. But in the case of gifts *causa mortis* more is needed. The gift must be made under the apprehension of death from some present disease, or some other impending peril, and it becomes void by recovery from the disease or escape from the peril. It is also revocable at any time by the donor, and becomes void by the death of the donee in the lifetime of the donor. It is not needful that the gift be made *in extremis* when there is no time or opportunity to make a will. In many of the reported cases the gift was made weeks, and even months, before the death of the donor, when there was abundant time and opportunity for him to have made a will. These are the main features of a valid gift *causa mortis*, as they are set forth in many textbooks and reported cases.'' See, also, *Lowe* v. *Hart*, 93 Ark. 548, 125 S. W. 1030.

This court is also committed to the rule that when a negotiable instrument is intrusted by one who signs it to the custody of another with blanks left therein, the instrument carries an implied authority to fill up the blanks. *White-Wilson-Drew Co.* v. *Egelhoff*, 96 Ark. 105, 131 S. W. 208. In that case, as here, the person receiving the instrument requested a third party to do the mechanical act of filling in the blanks. See, also, *Saxon* v. *McGill*, 179 Ark. 415, 16 S. W. 2d 987.

Appellant earnestly insists that a valid gift was not proved because the check was delivered to appellee in blank. It is also argued that there was no surrender to appellee of possession and dominion over the funds in-

volved as required by the tests laid down in the Carter case and by Ark. Stats., § 68-1304, which provides: "Every gift of goods, and chattels and all other conveyances of the same not on consideration deemed good in law, shall be void as against all creditors and purchasers, and all such gifts, grants and conveyances, shall be void even against the grantor, unless possession really and *bona fide* accompany such gift or conveyance."

The rights of creditors and purchasers are not involved in the case at bar and the check received by appellee was paid by the bank prior to the donor's death. The evidence clearly shows that decedent delivered the check to appellee with the intent of transferring the deposit to him and thereafter ratified this action by telling his nurse that he had signed the check and wanted his brother to have what was left after all bills were paid. It is also undisputed that at the time the check was given the donor was under apprehension of death from a serious illness from which he died without any intervening recovery and without any revocation of the gift. The signed check was filled in, cashed and the proceeds applied as directed by the donor and we find no merit in appellant's contention that no gift was consummated because the check was signed in blank. On the whole case, we conclude that the evidence was sufficient to establish a gift *causa mortis* under the tests laid down by our decisions.

It is next argued that the chancellor erred in permitting the two nurses and appellee's daughter to relate the conversations with deceased relative to the issuance and delivery of the check to appellee. It is insisted that this testimony was admitted in violation of the rule against hearsay evidence. One of the exceptions to the hearsay rule is that whenever a party claims under or in the interest or right of another, the declarations of such other person pertaining to the subject of the claim are admissible against him. Hence, the disserving admissions and declarations of an ancestor are admissible against those claiming under him as his heirs at law. 20 Am. Jur., Evidence, § 604. In *Jefferson* v. *Souter*, 150

Ark. 55, 233 S. W. 804, we held that declarations against interest are admissible against all who succeed to the declarant's interest, or who claim under him. See, also, *Russell* v. *Webb,* 96 Ark. 190, 131 S. W. 456; *Strickland* v. *Strickland,* 103 Ark. 183, 146 S. W. 501. The declarations of deceased in the case at bar were not self-serving, but were in the nature of declarations against his interests and the interests of appellee who claims under him. The chancellor correctly held such testimony admissible.

Appellant also contends that the chancellor erred in admitting the testimony of appellee relative to the transactions with deceased in reference to the check and insists that the testimony was inadmissible under Schedule § 2 of the Arkansas Constitution, which is commonly referred to as the "dead man's statute". This statute provides that where an administrator is a party to the suit, neither party may testify as to transactions with or statements of the intestate unless called to testify thereto by the opposite party. Appellant is correct in her contention unless the filing and use of the interrogatories propounded to appellee, and his answers thereto, amounted to calling him as witness within the meaning of the statute. These interrogatories required appellee to state how many checks were delivered to him by deceased, the persons present when the checks were given and other facts in connection with filling in of the blanks and payment of the check. The interrogatories were attached to the complaint and the answers given thereto were attached to appellee's answer. The questions and answers, although never formally introduced, were called to the attention of the chancellor at the hearing and appellee was cross-examined at length relative to the answers given. Appellant insists that since the interrogatories and answers are to be treated as a deposition under Ark. Stats., § 28-401, and were never formally introduced, they were completely abandoned and could have no further bearing upon the litigation.

The weight of authority supports the rule that the taking of the deposition of the adverse party with respect

to transactions or conversations with the deceased amounts to a waiver of the incompetency imposed by the statute as to such matters. It has been held in many cases that the taking of the adverse party's deposition amounts to calling him as a witness whether the deposition is introduced in evidence or not. Some of these cases were reviewed by the Oklahoma Court in *Cox* v. *Gettys,* 53 Okla. 58, 156 Pac. 892. The court held that the incompetency of testimony imposed by the dead man's statute was waived even though the deposition was never actually filed, saying: ''Any other construction of the statute would enable one party to search the conscience of his adversary, drag to light his private papers and other evidence, and then repudiate the result, if the experiment proved unsatisfactory.'' The court also approved the following language by the Missouri court in *Rice* v. *Waddill,* 168 Mo. 99, 67 S. W. 605: ''Can it differ in principle that, in this case, defendants took plaintiff's deposition, had it duly certified and thereby, in the language of counsel, 'heard what she said and that was all he wanted to know,' and then suppress the deposition; whereas, in the cases cited, the deposition was similarly taken and filed, but not used by the party taking it? Can a party thus trifle with the machinery of the law and avail himself of it if it suits his purposes, and reject it if it does not, and yet escape all the consequences of his acts? We hold he cannot.''

A similar result was reached by the Texas court in *Allen* v. *Pollard,* 109 Tex. 536, 212 S. W. 468, where Allen's deposition was taken by the adverse party (executor) and the court said: ''The taking of the deposition was for the purpose of obtaining Allen's testimony in respect to the matters inquired about. It was effective for the purpose. By its means the testimony was developed. Allen was made to disclose the facts. He was compelled 'to testify' regarding them. The method was one which the law furnished the adverse party and of which he availed himself, just as he might have called Allen to the stand. Allen's testimony was made subject to his use. It was not within Allen's power to prevent its use. He could not recall it. It stood adduced as a

part of the record of the proceeding. With his testimony compelled under oath and obtained at the instance of the adverse party through the force of the law, with it available for the free use of the adverse party and at his disposal, with it of record and constituting an integral part of the trial, we think it is evident that within the full intendment of the statute Allen must be regarded as having been called by his adversary to testify concerning the transaction with the decedent, and as competent, therefore, to give evidence in his own behalf in relation to it. Regardless of any use of the deposition, Allen had thereby been required to give the testimony in a way sanctioned by the law as only another and equivalent method to placing him upon the stand. The purpose of his adversary in seeking the testimony had been accomplished. It had been attained as fully as though Allen had been called to the stand, since the testimony was as effectually developed and rendered as freely available. The trial court made the proper ruling. *Gilkey* v. *Peeler,* 22 Tex. 663.'' Other cases to the same effect are: *McCoy* v. *Ferguson,* 249 Ky. 334, 60 S. W. 2d 931, 90 A. L. R. 891; *Thomas* v. *Irvin, Adm'r.,* 90 Tenn. 512, 16 S. W. 1045; *Barrett* v. *Cady,* 78 N. H. 60, 96 A. 325; *Hodge* v. *St. Louis Union Trust Co.* (Mo. Sup.) 261 S. W. 67; *Andrews* v. *Smith,* 198 N. C. 34, 150 S. E. 670; *Golder* v. *Golder,* 102 Kan. 486, 170 Pac. 803; *McClenahan* v. *Keyes,* 188 Cal. 574, 206 Pac. 454. See, also, Anno. 64 A. L. R. 1165, 159 A. L. R. 422.

Appellant relies principally on the cases of *Prince* v. *Abersold,* 123 Ohio St. 464, 175 N. E. 862, and *Clayton* v. *Ogden State Bank,* 82 Utah 564, 26 Pac. 2d 545. As to these cases, we concur in the following views expressed by the Washington court in *American Fruit Growers* v. *Calvert,* 186 Wash. 29, 56 Pac. 2d 1307: ''In the Prince case, *supra,* the Supreme Court of Ohio cited not a single authority. They simply declare, *ipse dixit,* that: 'After a careful examination of these decisions of other states, a majority of the court is of the opinion that the better and safer rule is that the mere filing of a deposition taken of an adverse party does not waive the inhibition of the

statute against the testimony of the party whose deposition has been so taken.'

"The Clayton Case, *supra,* was a case where the parties had stipulated that the depositions might be taken subject to any exception that might be interposed if the witness were present and testified at the trial. That court cited and quoted many of the conflicting cases upon the question of waiver, but then rested its decision upon the above stipulation, which it said 'puts an end to the argument,' as it should. Those cases are not persuasive."

The rule as to waiver of the incompetency of the adverse party has also been applied where the examination, as here, was by means of interrogatories. *Nolty* v. *Fultz,* 277 Ky. 49, 125 S. W. 2d 749; *Jones* v. *Jones,* 245 Ala. 613, 18 So. 2d 365; *Woodyard* v. *Sayre,* 90 W. Va. 547, 111 S. E. 313. In *Tenny* v. *Porter,* 61 Ark. 329, 33 S. W. 211, this court held that an examination of the adverse parties by interrogatories had the effect of calling them to testify within the meaning of the statute. The opinion in that case recites that the interrogatories and answers thereto were filed, but does not state whether they were formally introduced in evidence. We think the rule recognized by most of the cases on the question is supported by reason and common fairness. It would be palpably unjust for one party to force his adversary to disclose matters of defense under oath and then deny him the right to further explain the circumstances of the transactions thus disclosed. It is our conclusion that appellant waived the appellee's incompentency as a witness under the statute by use of the interrogatories although they were not introduced in evidence, and that the chancellor correctly so held.

The decree is affirmed.