MERCANTILE BANK, Administrator With The Will Annexed *v.* Douglas PHILLIPS, Rosa Lee PHILLIPS, Lee GLASCO and Lela GLASCO

75-357                                              538 S.W. 2d 277

Opinion delivered July 6, 1976

*Stephen R. Bigger* and *Alexander, Nicholson & Smith,* by: *Richard S. Smith,* for appellant.

*Frierson, Walker, Snellgrove & Laser,* by: *G. D. Walker,* for appellees.

FRANK HOLT, Justice. This is an accounting action brough in behalf of certain relatives of Mrs. Gertrude Sharpe, deceased, in the name of the appellant which is administrator of her estate. This case presents the question of the validity of various inter vivos gifts during 1972 and 1973 totalling $59,-738.65 and $6,000 on January 2, 1974, allegedly made to the appellees (and the two children of the Phillipses) by the deceased. These gifts were allegedly made during the last twenty-three months of her life. She was seventy-six years old at the time of her death, February 16, 1974. Appellees are the deceased's niece, Lela Glasco, her husband Lee Glasco, their daughter Rosa Lee Phillips and her husband Douglas Phillips. A general power of attorney was executed by the

deceased to Douglas Phillips on January 26, 1971, and in that capacity he handled the transactions in question which occurred during the interval of March 16, 1972, and January 2, 1974. The accounting hearing was brought by appellant seeking a judicial declaration that the alleged inter vivos gift transfers were invalid based upon (1) breach of fiduciary duty by misappropriation and overreaching, (2) lack of comprehension by reason of mental incompetency, (3) undue influence, and (4) lack of the deceased's intent or delivery concerning the alleged gift transfers.

The chancellor found and decreed that:

Gertrude P. Sharpe was mentally competent until the last few weeks of her life and then had lucid intervals; that none of the defendants exerted undue influence or overreaching over Gertrude P. Sharpe as to any transfers of property within the meaning of the law; that the gifts made to Douglas Phillips, Rosa Lee Phillips, Jennifer Lyn Phillips, John D. Phillips Jr., Lee Blasco and Lela Glasco by Gertrude P. Sharpe in her life, **** were valid legal gifts from Gertrude P. Sharpe in her lifetime **** with the following two exceptions:

(1) . . . . the said jewelry were not valid gifts inter vivos or gifts cause mortis, and consequently, the aforesaid jewelry must be turned over to the Plaintiff, Mercantile Bank as Administrator . . . .

(2) That the $3,000.00 check drawn by Mrs. Gertrude P. Sharpe on November 3, 1969, made payable to Douglas Phillips with a notation, "Loan" and endorsed by the said Douglas Phillips, is not barred by the three-year Statute of Limitations and there is insufficient corroboration of Douglas Phillips' testimony to show that the debt had been forgiven . . . .

The complaint of the appellant was otherwise dismissed and hence this appeal. Appellees cross-appeal from the decree with respect to the $3,000 check.

Since the appellant's contentions and arguments made under points 7, 8 and 9 are so related, we will discuss them

first and together in order to prevent repetition. The thrust of appellant's argument is that the deceased did not have sufficient mental competency during the last 23 months of her life to be capable of exercising competent judgment regarding the questioned gift transfers; appellees, being in a fiduciary relationship, have not met the burden of establishing no undue influence or overreaching and, therefore, the chancellor erred in finding the gifts in question were valid, legal gifts. We cannot agree.

It is not disputed by the appellees that a fiduciary relationship existed between appellee Douglas Phillips and the deceased at the time of the alleged gifts. Neither do the appellees question the rule in *Barrineau* v. *Brown,* 240 Ark. 599, 401 S.W. 2d 30 (1966), and our similar decisions relied on by appellant; i.e., a donee who has a fiduciary relationship to the donor has the burden of proof, by clear and convincing evidence, to overcome the presumption of invalidity of a gift when it stems from such a relationship.

There is volunimous testimony, both lay and expert, regarding the deceased's mental capacity. There was some testimony that she was not the same after her husband passed away in 1965 and some testimony that indicated a change after her only child was killed in 1949. There was a great deal of testimony by some of her relatives and others, including a daytime and nighttime attendant, that during the two years preceding her death in February, 1974, she was at times confused, disoriented and had difficulty recalling facts. She was repetitious in her conversations and actions and was irrational in her behavior. Several witnesses said at times she was just like a child and was not competent to engage in business transactions. There was medical evidence she suffered from cerebral arteriosclerosis (hardening of the arteries) which resulted in senility.

There was an abundance of testimony that most of the time she was entirely rational and able to transact business. Lewis Goad, president of her bank and a friend for more than thirty years, testified "[S]he needed help in her business but I agree, that given sound help and advice there was no reason why she couldn't transact business." The assistant cashier of her bank, who observed the deceased at the bank for twenty-

seven years, testified she would characterize her behavior "[J]ust as normal as any elderly person could be." The pastor of her church testified that she attended church regularly until she became ill in January, 1974. She was active in her Bible class. He visited her in her home once or twice a month and saw her occasionally about town. During the times he observed her "as far as mental judgment and competency are concerned I would say that by and large that she knew who she was, where she was and what she was doing."

Several witnesses, who saw her regularly including some of her neighbors for many years, testified that they considered Mrs. Sharpe as being rational, normal, mentally alert and competent. Her personal physician, Dr. Swingle, who had treated the deceased for twenty years and saw her socially, testified that up until the last two years of her life she was 100% lucid. From September 1, 1973, until January 28, 1974, he saw her about seven times professionally and socially on occasions. During that time he considered her 80% lucid until she was hospitalized for a physical illness on the latter date. He also testified on cross-examination that "I believe that Mrs. Sharpe was lucid enough to retain in memory, without prompting from another person, the extent and condition of the property she had disposed of by will, inventory and gifts and bequests. . . . . It was my opinion that Mrs. Sharpe was lucid and sane and had no defect of reasoning as far as I could ascertain." According to him she was an exceptional physical and mental specimen until the latter part of 1973.

The appellees, Mr. and Mrs. Glasco, had lived across the street from the Sharpes since 1946. Mrs. Sharpe's husband gave the Glascos $4,500 for the purchase of their home in 1964. Mrs. Glasco is Mrs. Sharpe's neice. During these many years they were very attentive to her every need. When Mrs. Sharpe broke her hip and arm in 1969, she lived with them approximately three months. The appellees, Douglas and Rosa Lee Phillips, lived in a nearby town. Mrs. Phillips is the Glascos' daughter and Mrs. Sharpe's great neice. They, likewise, were constantly solicitous and attentive to Mrs. Sharpe. There was uncontradicted testimony she considered the Glascos and the Phillipses to be her children and the Phillipses' children, John and Jennifer, her grandchildren. A

close friend and neighbor to the deceased and her husband for many years and who saw her regularly testified as abstracted:

> I just don't see how the relationship of the Glasco and Sharpe family could be any better. They were very close and looked after them day and night. . . . I would say she looked on them as the only family she had left to look after her, as her children. . . . Well, she had, as I said, her good days and bad days in her memory, but when she was at herself she was at herself, and she never failed to talk sense when I talked to her and when I saw her and visited her. . . . I don't know what Mrs. Sharpe would have done without the Glascos and the Phillipses. I really don't.

In referring to John and Jennifer Phillips, this friend said Mrs. Sharpe "talked about she was going to educate the children. . . . It was just like they were her own children." This is supported by a letter from Mrs. Sharpe in February, 1972, to her bank authorizing the use of certain funds to educate the Phillipses' children.

Appellee Douglas Phillips is an insurance agent, a C.L.U., with training and experience in business matters. After Mrs. Sharpe's husband died in 1965, she relied upon him, without any remuneration to him, in the conduct of her business affairs. Her property interests were extensive and reflect total assets of $627,584.84 (real estate $273,000, cash, $500 car, and securities $354,084.84). The attorney, who prepared the legal instrument in January, 1971, giving appellee Phillips a general power of attorney, testified that both Mrs. Sharpe and Douglas Phillips were in his office and there was a discussion as to what she wanted. He then drafted the document, read and explained it to her. She executed in his presence. As abstracted, "[I]t appeared to me that Mrs. Sharpe completely understood it and I thought that it would meet the purposes for which they came." Appellee Douglas testified that the deceased directed him to make the gifts in question during the last two years of her life as part of an overall estate tax gift plan and he considered her competent to make the gifts. Several witnesses testified without contradiction that Phillips' reputation in the community for

truthfulness, honesty and integrity was good. One witness said as abstracted "I would say that very well describes his reputation. His integrity is beyond question I would say."

Appellee Douglas Phillips' testimony is corroborated by Grover Freeman, a C.P.A., who testified that following Mrs. Sharpe's husband's death in 1965 and on various occasions during the last few years of her life, he discussed with her the subject of gift and estate problems and the advantages of having a program of gifts to alleviate her estate taxes. As abstracted, "I would say that Mrs. Sharpe was aware of the tax problems involved in the estate taxes as a result of her husband's estate tax situation. . . . I recommended that she might consider making some gifts to the people that she might be considering in her will [appellees are made beneficiaries in Mrs. Sharpe's 1967 will] anyway to take it out of the estate to save estate taxes. . . . I made the recommendation to her to purchase these bonds [government bonds] and save taxes. This was part of the estate planning that I did with her. I do not recall any other recommendations I made to her besides these gifts and bonds, and generally that was the extent to our conversation in that regard. She bought $100,000 worth of bonds. . . . In 1970 she was considering estate taxes and means of avoiding or reducing them. I made the recommendations regarding the gifts at that time. I think she understood generally what was being said to her. . . . I might say this, that Mrs. Sharpe had no trouble understanding and following through on a suggestion that she buy $100,000.00 of Federal Government Bonds at a favorable price to alleviate estate taxes. I didn't have to explain that twice." In further corroboration, there were five quarterly gift tax returns signed by her covering the period of gifts from March 16, 1972, until December 31, 1973. These five returns identified in detail the gifts which total $59,-738.65. A gift of $3,000 each to John and Jennifer was made on January 2, 1974. Since she died in February, 1974, no gift tax return for that quarter was made.

In summary, the inventory of Mrs. Sharpe's estate consisted of $627,584.84 in total assets. In her 1967 will she made various specific bequests to her relatives and charities. Among these was an interest in her home to the Glascos and $10,000 to the Phillipses. However, by specific bequests and

the residual clause of her will, the vast part of her estate was left to her brother, sisters and numerous other relatives. Her accountant testified that he had disucssions about a gift tax program with her for the purpose of alleviating her estate taxes. It appears that following these discussions, the gifts in question were made. Five quarterly gift tax returns were filed in 1972 and 1973 detailing the names of the donees, the amounts and the dates of the gifts. It is undisputed that they were signed by Mrs. Sharpe and approved by her accountant. Over one-half of the amount of the questioned gifts were made to the Phillipses' children, John and Jennifer, regarded by her as her grandchildren. It appears one or both of them were college students. There was testimony by a disinterested witness and a letter from Mrs. Sharpe to her bank indicating her desire to educate John and Jennifer. It is further undisputed that the appellees were kind to Mrs. Sharpe and took painstaking care of her every need for many years. She regarded them as her children.

The finding of the chancellor on a fact question will not be disturbed by us on appellate review unless the finding is against the preponderance of the required evidence. *Nutt* v. *Strickland*, 232 Ark. 418, 338 S.W. 2d 193 (1960). In *Murphy* v. *Osborne*, 211 Ark. 319, 200 S.W. 2d 517 (1947), we aptly said "the chancellor saw each witness when he testified. The chancellor observed the demeanor on the witness stand, the inflection in the voice and the hesitancy or rapidity of the words flowing from the mouth of the witness. The chancellor thus had an opportunity to see more than the mere words on the printed page which, alone, come to this court." In the case at bar the chancellor had the advantage of seeing and hearing the witnesses in resolving the disputed issues. Therefore, when we consider this together with all the evidence, we cannot say his finding as to competency, undue influence and overreaching is not supported by clear and convincing evidence.

We next consider appellant's contention that the chancellor erred in allowing the appellees to introduce appellee Douglas Phillips' answers to appellant's interrogatories. Appellant argues that the answers contained inadmissible self-serving declarations and hearsay. We perceive no prejudice because the interrogatories were offered

"expressly not for evidentiary purposes" but solely for the purpose of proving they were made and to constitute a waiver of the dead man's statute. In *Motors Insurance Corporation* v. *Lopez,* 217 Ark. 203, 229 S.W. 2d 228, this court said:

> A statement made out of court is not hearsay if it is given in evidence for the purpose merely of proving that the statement was made, provided that purpose be otherwise relevant in the case at trial.

Appellant also asserts that the chancellor erred in holding that the appellees' introduction of appellee Douglas Phillips' answers to appellant's interrogatories constituted appellant's waiver of the dead man's statute, Arkansas Constitution (1874), Schedule 2, which provides in pertinent part:

> . . . . in actions by or against executors, administrators or guardians in which judgment shall be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party.

Appellant argues that when the appellee Douglas Phillips' answers are introduced on behalf of appellees, it cannot truly be said that he was "called to testify by the opposite party," and, consequently, no waiver of the dead man's statute resulted by the use of the interrogatories. Appellees respond that by the use of the interrogatories directed to appellee Douglas Phillips, the appellant waived any disqualification of Phillips as a witness. We agree. *Smith, Administratrix* v. *Clark,* 219 Ark. 751, 244 S.W. 2d 776; *Hood, Executrix* v. *Welch,* 256 Ark. 362 (1974); and *Tenny* v. *Porter,* 61 Ark. 329, 33 S.W. 211 (1895).

We next consider appellant's assertion that the court erred in admitting hearsay testimony of appellee Lee Glasco and appellee Douglas Phillips regarding conversations with the deceased's husband, A. J. Sharpe, who died in 1965. Appellant argues that the testimony of Glasco and Phillips concerning Sharpe's generosity was incompetent as hearsay and irrelevant since the question of whether or not Sharpe

was a generous man is not an issue. We review chancery cases de novo and consider only such testimony as is competent. *Newsom v. Reed,* 177 Ark. 177, 6 S.W. 2d 10 (1928). Suffice it to say, here we consider the evidence sufficient without considering the asserted incompetent testimony.

Appellant next contends that the chancellor erred in permitting appellee Douglas Phillips' "almost carte blanc leeway in incorporating discussions that Phillips alleges ensued with deceased since most of Phillips' testimony violates the substance and spirit of the hearsay rule and/or the dead man's statute." Appellant argues that since virtually all the substance of Douglas Phillips' testimony is founded upon unreliable self-serving recapitulations of his conversations with deceased, "it would serve little purpose to enumerate practically all the pages of his direct examination testimony that incorporates pervasive hearsay as well as violations of the Dean Man's Statute." That part of the argument relating to the dead man's statute is repetitious and was disposed of earlier in this opinion. As to that portion of appellant's argument referring specifically to certain conversations as self-serving declarations and hearsay, suffice it to say that we deem other evidence sufficient without considering the asserted examples of inadmissible evidence.

Appellant next asserts that the court erred in admitting picture film strips that had been spliced and edited by appellee. The film in question was a motion picture reel prepared by appellees for trial from several boxes of film which the Phillipses and Glascos had taken over a period from Easter, 1956, to Christmas, 1965, showing occasions of visits of the two families with Mr. and Mrs. Sharpe. Appellant argues that the motion picture "may not" accurately show what they are represented to portray because the film was spliced and edited without any unbiased supervision; fabrication is "entirely possible" since there is no practical way to determine exactly what was deleted; and to allow such edited and spliced films involving remote occasions as distant as 1956 is so unreasonable as to constitute abuse of the trial court's discretion. We cannot agree. Here there is no evidence that the films do not represent an accurate reproduction or that they convey a false impression. Counsel for appellant was given an opportunity to view any edited

portions of the film in appellees' possession and to supply any films that it felt were relevant. The pictures were properly admitted. *Sloan v. Newman,* 166 Ark. 259, 266 S.W. 257 (1924).

Neither can we agree that the chancellor erred in refusing to allow into evidence portions of Dr. Schoettle's deposition. It is asserted that the court rendered inadmissible relevant admissions against interest allegedly made by appellee Lee Glasco. The evidence about which appellant is concerned is a medical history of the deceased taken from a hospital admissions record which was made when deceased was admitted to the hospital on January 28, 1974. It appears the record itself was not offered into evidence. Suffice it to say that the authenticity of the hospital record was not properly established by any testimony under oath. Further, the portion asserted as being relevant is admittedly based upon the mere assumption of Dr. Schoettle, the deponent.

On cross-appeal it is contended that the trial court erroneously held that the claim based upon the $3,000 debt of appellee Douglas Phillips was not barred by the three year statute of limitations. Ark. Stat. Ann. § 37-206 (Repl. 1962). The thrust of cross-appellant's argument is that the check given by Mrs. Sharpe to Phillips for $3,000 marked "loan" did not constitute a written contract and since more than three years expired before appellant's action was commenced, the chancellor erred in not holding the suit was barred. We cannot agree. Appellee Phillips was given power of attorney before the three year statute of limitations had expired. In this fiduciary capacity he was her business advisor and she relied upon him in the conduct of her affairs. Therefore, he is estopped to invoke the statute of limitations. See *Leach v. Moore,* 57 Ark. 588, 22 S.W. 173 (1893); 51 Am. Jur. 2d, Limitation of Actions, § 452; 45 ALR 3d 630.

Affirmed on direct and cross-appeal.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. The law correctly places upon a fiduciary the obligation to show by clear, cogent and convincing evidence that his self dealings with the trust property were authorized. Regarding the checks which

appellee wrote to himself or his family and on which Mrs. Sharpe filed gift tax returns to the Internal Revenue, I cannot say that the chancellor erred; although the issue is close. However, I cannot agree with the majority that appellee discharged his burden of proof as to the checks written to himself or his family on which no gift tax returns were made. We have in the record only the testimony of appellee that those checks were gifts. Surely the majority is not saying that the fact that appellee was kind to and considerate of Mrs. Sharpe corroborated his testimony. If that be the majority's view, then all embezzlements by a kind and considerate fiduciary should be considered gifts.

For the reasons stated, I respectfully dissent.